STATE OF NORTH CAROLINA v. KATHY WILLIS SHULER

No. COA98-1317

(Filed 2 November 1999)

**Criminal Law— closing argument—evidence not introduced during cross-examination—right not waived**

Defendant is entitled to a new trial in a judgment finding her guilty of twelve counts of embezzlement since the trial court erred in denying defendant the right to conduct the closing argument to the jury when it improperly concluded defendant waived this right by introducing evidence, within the meaning of Rule 10 of the Superior and District Courts' General Rules of Practice, during her cross-examination of a witness about the contents of three interviews.

Appeal by defendant from judgments dated 15 December 1997 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 9 September 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Marian Hill Bergdolt, for the State.*

*Eric J. Foster for defendant-appellant.*

GREENE, Judge.

Kathy Willis Shuler (Defendant) appeals a judgment reflecting a jury verdict finding her guilty of twelve counts of embezzlement.

In April 1994, Defendant was employed as an administrative assistant by Mountain Health Services (Mountain Health), a subsidiary of St. Joseph's Health Services Corporation (St. Joseph's). Mountain Health managed a number of health-care related businesses including a medical building in which office space was leased to physicians, a retirement community, a pharmacy, and an inn used by hospital patients and their family members. As part of her employment responsibilities, Defendant accepted payment for rooms at the inn. Defendant also deposited payments received by the pharmacy and rental payments received for office space. Each morning, the previous day's cash, checks, and credit card receipts from the pharmacy were brought to Defendant, and rental payments for office space were generally received by mail.

In April 1995, Mountain Health began receiving complaints from customers that checks were not being credited to their accounts at the pharmacy. Mountain Health therefore began an internal investigation, which revealed it was missing approximately $25,000.00. The State's evidence, which included financial records in their complete and summary forms, tended to show that over a period of fifteen months Defendant manipulated bank deposits for the pharmacy, primarily by substituting checks in her control for cash taken from pharmacy deposits. The State's witnesses included Marlene Marshall (Marshall), chief accountant for St. Joseph's, Pat Jackson (Jackson), controller for St. Joseph's, and Wanda Frady (Frady), an employee in Mountain Health's pharmacy.

During direct examination, Marshall explained St. Joseph's accounting procedures, which included reconciling accounts, as well as investigating overages and underages in the financial records. On cross-examination, Marshall testified she was responsible for reconciliation for St. Joseph's and its subsidiaries, including Mountain Health. When reconciling accounts, Marshall would compile into financial statements reports provided by the manager of each subsidiary at the end of each month. Marshall also performed an overall reconciliation for Mountain Health on a computerized spreadsheet and reviewed bank deposits prepared by various employees, including Defendant.

Jackson testified on direct examination that she became aware of an accounting problem at Mountain Health when Frady told her payments had not been properly credited to some patients' accounts. Marvin Harrison (Harrison), a certified fraud investigator, was then

STATE v. SHULER

[135 N.C. App. 449 (1999)]

employed to assist Jackson in an investigation of financial records at Mountain Health. Jackson stated Defendant agreed to participate in an interview with Harrison and Jackson, which took place on 19 July 1995. During the interview, Defendant stated she prepared all pharmacy deposits for Mountain Health. When asked for an explanation for cash shortfalls, checks being held several days, and hotel checks being deposited as part of pharmacy receipts, Defendant stated checks may have gotten mixed up on her desk. When asked whether she knew of shortfalls, Defendant said she did not.

Jackson also testified regarding the preparation of numerous financial records, which were introduced into evidence by the State during Jackson's testimony. The records included deposit slips from the pharmacy prepared by Defendant and daily drawer balancing reports prepared for the pharmacy.

During cross-examination, Defendant's counsel placed a document before Jackson, marked "Defendant's Exhibit No. 9," which Jackson identified as a transcript of the 19 July 1995 interview with Defendant. Defendant's counsel read portions of the transcript to Jackson, including questions Harrison had asked Defendant and Defendant's answers. The questions concerned whether Defendant had knowledge of someone taking cash and substituting checks from Mountain Health, whether Defendant realized that she was the only "common thread" in the suspect transactions, whether Defendant had in fact taken cash and substituted checks, and whether Defendant had any information as to how such a transaction might have occurred.

Other statements made by Harrison, which were read during cross-examination, included Harrison's declaration of his belief Defendant took the money, and Harrison's request for permission to look into Defendant's personal financial records. Jackson testified she remembered the portions of the interview read by Defendant's counsel, including Defendant's statements during the interview that she did not know anything about the substitutions of checks for cash, she herself had not substituted checks for cash, and she would provide her personal records for examination.

Defendant's counsel also asked whether Jackson recalled Jackson's and Harrison's interview of Marshall, which took place on 27 July 1995, and Jackson responded that she did. Jackson testified she did not recall during that interview discussing hotel accounting procedures involving Ann Byers (Byers), a co-employee of Marshall,

or discussing the accounting office's sheet for Mountain Health deposits. Defendant's counsel then asked Jackson to identify a document, "Defendant's Exhibit No. 10," which Jackson identified as a transcript of the 27 July interview with Marshall. At the request of Defendant's counsel, Jackson read a portion of the transcript silently. She said it did not refresh her memory about the interview.

Defendant's counsel then asked Jackson if she was present during the 27 July interview, and she replied that she was present. Jackson recalled from the interview that Byers had some involvement with accounting procedures, but she did not remember specific details of that involvement. She also recalled Marshall and Byers did not take the deposit slips prepared by Defendant "verbatim," and that they prepared similar records to compare to Defendant's records.

Finally, Defendant's counsel also asked Jackson a question about a second interview with Defendant, which took place on 31 July 1995. He asked whether Jackson recalled Harrison telling Defendant in that interview that checks were used to replace cash, and Jackson responded that she did.

After the State completed the presentation of its evidence, Defendant chose not to present any evidence. Before allowing the attorneys to make their jury arguments, the trial court on its own motion stated Defendant had "got off with . . . Jackson and had her reading statements made by . . . Harrison, who did not testify, and documents that were not offered into evidence by the State, that that rises to putting on evidence." The trial court then, over Defendant's objection, denied her the closing jury argument.

---

The dispositive issue in this case is whether Defendant introduced evidence during her cross-examination of Jackson, thereby losing her right to conduct the closing argument to the jury.

When a defendant does not introduce evidence, he retains "the right to open and close the argument to the jury." Gen. R. Pract. Super. and Dist. Ct. 10, 1999 Ann. R. N.C. 66 (Rule 10). As a general proposition, any testimony elicited during cross-examination is "considered as coming from the party calling the witness, even though its only relevance is its tendency to support the cross-examiner's case." Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 170, at 559 (5th ed. 1998) [hereinafter *North Carolina Evidence*]. Indeed, the general rule also provides there is no right to offer evidence during cross-examination. *Id.; State v. Yoes*

*and Hale v. State*, 271 N.C. 616, 646, 157 S.E.2d 386, 409 (1967) (parties "not entitled to offer evidence of their own, under the guise of cross[-]examination"). Nonetheless, evidence may be "introduced," within the meaning of Rule 10, during cross-examination when it is "offered" into evidence by the cross-examiner, *State v. Hall*, 57 N.C. App. 561, 564, 291 S.E.2d 812, 814 (1982); *see North Carolina Evidence* § 18, at 70 (describing methods for offering different types of evidence), and accepted as such by the trial court. *North Carolina Evidence* § 170, at 560 n.592 (trial court has discretion to vary order of proof); *State v. Baker*, 34 N.C. App. 434, 441, 238 S.E.2d 648, 652 (1977) (defendant allowed to introduce, during cross-examination, a picture he used to cross-examine witness). Although not formally offered and accepted into evidence, evidence is also "introduced" when new matter is presented to the jury during cross-examination and that matter is *not* relevant to any issue in the case. *See State v. Macon*, 346 N.C. 109, 114, 484 S.E.2d 538, 541 (1997) (cross-examination of State's witness about contents of defendant's statement, which had not been presented by the State and which "did not relate in any way" to testifying witness, constituted the "introduction" of evidence within meaning of Rule 10); N.C.G.S. § 8C-1, Rule 611(b) (1992) ("witness may be cross-examined on any matter relevant to any issue in the case"). New matters raised during the cross-examination, which are relevant, do not constitute the "introduction" of evidence within the meaning of Rule 10. *See* N.C.G.S. § 8C-1, Rule 401 (defining relevant evidence). To hold otherwise, "would place upon a defendant the intolerable burden of electing to either refrain from the exercise of his constitutional right to cross-examine and thereby suffer adverse testimony to stand in the record unchallenged and un-impeached or forfeit the valuable procedural right to closing argument." *Beard v. State*, 104 So. 2d 680, 682 (Fla. Dist. Ct. App. 1958).

In this case, the State contends Defendant introduced evidence when he questioned Jackson during cross-examination about the contents of three interviews, which took place on 19 July 1995, 27 July 1995, and 31 July 1995. We disagree.

Jackson, Harrison, and Defendant were present at the 19 July interview and, on direct examination, Jackson testified regarding some of the statements made by Defendant during the interview. These statements were made in response to questions asked by Jackson and Harrison. On cross-examination, Defendant's counsel showed Jackson a transcript of the 19 July interview and read por-

tions of questions Harrison had asked Defendant during the interview. These questions put Defendant's answers into context, and Jackson had testified regarding those answers during direct examination. Although Jackson's testimony on cross-examination contained new matter regarding the 19 July interview, the new matter was relevant to Jackson's testimony during direct examination. Defendant therefore did not introduce evidence of the 19 July interview.

Jackson, Harrison, and Marshall were present at the 27 July interview. While this interview was not discussed during direct examination of Jackson, Defendant's counsel asked Jackson about the interview during cross-examination. Jackson testified, however, she did not recall the contents of the interview even after reviewing a transcript of the interview at the request of Defendant's counsel.

Although Jackson did not remember "specifics" of the interview, she stated Byers and Marshall, when reviewing accounting records, did not take figures supplied by Defendant "verbatim," but also prepared their own totals. Jackson's testimony regarding the preparation of financial records by Marshall and Byers is relevant to the reliability of those records, which were themselves introduced by the State during direct examination of Jackson. The State introduced deposit slips prepared by Defendant as well as daily drawer balance reports from the pharmacy, and Jackson relied on these documents during her investigation. Further, Marshall testified for the State about St. Joseph's accounting procedures, and on cross-examination stated she prepared an overall reconciliation for Mountain Health and reviewed deposits prepared by Defendant. Although the evidence of Marshall's and Byers' accounting procedures when reviewing deposits prepared by Defendant was not presented in direct testimony, it is nevertheless relevant to the financial records introduced by the State and Marshall's and Jackson's testimony about accounting procedures. Defendant therefore did not introduce evidence regarding Mountain Health's accounting procedures.

Finally, Jackson, Harrison, and Defendant were present at the 31 July interview. Defendant's counsel did not provide Jackson with a transcript of this interview but, referring to the transcript of the interview, did ask Jackson if she recalled Harrison telling Defendant checks were used to replace cash in the pharmacy. Jackson responded she did recall Harrison making this statement during the interview. Although the State did not ask Jackson about the 31 July interview during direct examination, Harrison's statement from that

interview that checks were being used to replace cash in the pharmacy was relevant to Harrison's and Jackson's investigation of missing funds. The same parties were present at both the 19 July and 31 July interviews, both interviews were conducted for the purpose of discussing with Defendant whether she had any knowledge of the missing cash from the pharmacy, and Harrison made similar statements to Defendant during both interviews. Because Harrison's statements from the 31 July interview were relevant to Harrison's and Jackson's investigation of Defendant, an issue brought out by the State during direct examination of Jackson, Jackson did not testify on cross-examination regarding new matters. It follows Defendant did not introduce evidence by asking Jackson about Harrison's statement during this interview.

Because Defendant did not introduce any evidence within the meaning of Rule 10, she was improperly deprived of her right to the closing argument to the jury. The improper deprivation of this right entitles Defendant to a new trial.[1] *Hall*, 57 N.C. App. at 565, 291 S.E.2d at 815.

We have reviewed the additional assignments of error brought forth by Defendant but, because they are unlikely to recur at a new trial, we do not address them.

New trial.

Judges TIMMONS-GOODSON and HORTON concur.

---

1. The State argues in its brief to this Court that Frady's testimony, elicited on cross-examination, constituted the introduction of evidence within the meaning of Rule 10. We first observe the record reveals the trial court did not rely on this cross-examination as a basis for determining Defendant had presented evidence. In any event, we have reviewed that cross-examination and have determined it to be relevant to issues in the case. This testimony therefore did not constitute the introduction of evidence.