STATE OF NORTH CAROLINA v. BOBBY LEE ENGLISH

No. COA08-613

(Filed 16 December 2008)

**Criminal Law— final closing argument—cross-examination— new evidence not introduced**

A defendant in a first-degree murder prosecution was erroneously deprived of his right to make the final closing argument where he did not introduce new evidence during cross-examination, as the trial court ruled. A detective was cross-examined about possession of a gun stolen from the victim after testifying on direct examination about a codefendant's statements concerning the gun. Credibility was an issue because the codefendants were accusing each other, and the cross-examination of the detective could have been an attempt to impeach the codefendant.

Appeal by defendant from judgments entered on or after 11 September 2007 by Judge Robert C. Ervin in Burke County Superior Court. Heard in the Court of Appeals 9 October 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General L. Michael Dodd, for the State.*

*Marilyn G. Ozer, for defendant-appellant.*

TYSON, Judge.

Bobby Lee English ("defendant") appeals judgments entered after a jury found him to be guilty of: (1) first-degree murder; (2) first-degree burglary; (3) conspiracy to commit first-degree burglary; (4) robbery with a dangerous weapon; and (5) conspiracy to commit robbery with a dangerous weapon. Because the trial court erroneously deprived defendant of his right to make the final closing argument to the jury, we hold defendant is entitled to a new trial.

I. Background

On 5 February 2004, Henry Gibson ("Gibson"), an eighty-two-year-old military veteran, was beaten to death in his home during the course of a burglary and robbery. At trial, the State's evidence tended to show Leiah Helton ("Helton"), Cristal Perryman ("Perryman"), and defendant had spent the week prior to the burglary and robbery

"smoking crack" and had exhausted their money. Helton had robbed Gibson previously and knew that he kept a large sum of cash in a "sack" inside his recreational vehicle. On 4 February 2004, Helton devised a plan to rob Gibson a second time and recruited Perryman and defendant to assist her in the robbery. Sometime after midnight on 5 February 2004, Helton, Perryman, and defendant were driven to Gibson's residence by Adrianna Juarez ("Juarez").

Helton instructed Juarez to "drive around for about 15 or 20 minutes, [and] then come back." Helton retrieved the ax handle she had brought along to subdue Gibson and handed it to defendant to conceal under his sweatshirt. As Helton, Perryman, and defendant approached Gibson's residence, Helton instructed defendant to strike Gibson with the ax handle on her signal.

Helton disguised her appearance and knocked on Gibson's door three times before he answered. Helton gave Gibson a false name and stated that her car had run out of gas and that she needed money. Gibson opened the door and invited Helton, Perryman, and defendant inside his residence. Helton subsequently signaled for defendant to attack Gibson. Defendant pulled the ax handle from underneath his sweatshirt, dropped it to the ground, and punched Gibson in the face. Gibson remained unconscious for approximately two to three minutes. While Gibson remained unconscious, Helton asked him repeatedly where he kept his money. After Gibson failed to respond, Helton hit him in the face with the ax handle multiple times.

Helton and defendant searched through Gibson's clothes and found a gun wrapped in newspaper. Helton threw the gun on the floor near the door so she could retrieve it on the way out. In the meantime, Perryman searched Gibson's residence and found money hidden under the couch. Perryman stated "I found the money. Let's go." Perryman walked out the door and began putting money into her pockets.

The sequence of events that follow are disputed. Perryman testified defendant exited Gibson's residence three to four seconds after her. Approximately four minutes later, Helton exited Gibson's residence holding a knife and stated, "It's done. It's over . . . I slit his throat."

Defendant's account of what transpired during and after the robbery varied slightly with Perryman's trial testimony. Defendant stated it took Helton approximately thirty to forty-five seconds to exit Gibson's residence with a knife in hand. Defendant's statement to

police was introduced through testimony from State Bureau of Investigations ("SBI") Agent Charlie Morris.

Helton testified that after Perryman exited Gibson's residence, she followed to ensure Perryman would not hide the stolen money from her. Helton testified that she stopped Perryman and asked her "[w]here's it at?" Helton informed Perryman that the group needed to stay together and walked back to the entrance of Gibson's residence. Helton testified that defendant met her at the door and stated "[w]ait out here." After approximately three to five minutes, defendant exited the residence and stated, "I took care of it." The group subsequently split $5,000.00 in cash they had stolen and drove back to Helton's apartment to purchase more "crack."

Laura Rolland, Gibson's neighbor, called law enforcement the following evening after she noticed Gibson's door had remained open all day while the temperature outside was thirty degrees. Burke County deputy sheriffs found Gibson deceased, lying on the floor of his residence. Gibson's chest, sternum, and six ribs had been crushed by blunt force trauma, which caused massive internal bleeding.

Perryman, Helton, and defendant subsequently confessed to their involvement in these crimes through written statements to various law enforcement officers. Helton pleaded guilty to first-degree murder and agreed to testify on behalf of the State. In exchange, the State agreed not to seek the death penalty against her. Perryman pleaded guilty to second-degree murder and agreed to testify on behalf of the State. In exchange, the State dismissed other charges pending against her.

On 4 September 2007, defendant's case proceeded to trial. Defendant did not testify on his own behalf or call other witnesses. On 11 September 2007, the jury found defendant to be guilty of: (1) first-degree murder; (2) first-degree burglary; (3) conspiracy to commit first-degree burglary; (4) robbery with a dangerous weapon; and (5) conspiracy to commit robbery with a dangerous weapon. Because defendant's first-degree murder conviction was based on felony murder, the trial court arrested judgment on the first-degree burglary conviction.

The trial court found defendant to be a prior record level III offender and sentenced him to life imprisonment without parole for his first-degree murder conviction. Defendant's remaining charges were consolidated and the trial court imposed a consecutive sentence

of a minimum of 96 to a maximum of 125 months imprisonment. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) denying defendant the right to make a final closing argument to the jury; (2) denying defendant's motion to dismiss both conspiracy charges based upon insufficiency of the evidence; (3) entering judgment on two counts of conspiracy; and (4) instructing the jury on the theory of acting in concert. Defendant also argues a mandatory sentence of life imprisonment without the possibility of parole violates the Eighth Amendment to the United States Constitution.

## III. Right to Closing Argument

The dispositive issue before this Court is whether the trial court committed reversible error by denying defendant the right to make the final closing argument to the jury.

Rule 10 of the General Rules of Practice for the Superior and District Courts confers upon the defendant in a criminal trial the right to both open and close the final arguments to the jury, provided that "no evidence is introduced by the defendant[.]" N.C. Super. and Dist. Ct. R. 10 (2007). This right has been deemed to be critically important and the improper deprivation of this right entitles a defendant to a new trial. *State v. Shuler*, 135 N.C. App. 449, 455, 520 S.E.2d 585, 590 (1999) (citing *State v. Hall*, 57 N.C. App. 561, 565, 291 S.E.2d 812, 815 (1982) (footnote omitted)); *see also State v. Hennis*, 184 N.C. App. 536, 539, 646 S.E.2d 398, 400 (2007) ("[Defendant] did not "introduce" evidence within the meaning of Rule 10. As in *Bell* and *Wells*, we must conclude the trial court's error in denying defendant the final argument entitles defendant to a new trial." (Citations omitted)), *disc. rev. denied*, 361 N.C. 699, 653 S.E.2d 148 (2007); *State v. Bell*, 179 N.C. App. 430, 433, 633 S.E.2d 712, 714 (2006) ("Defendant did not introduce any evidence within the meaning of Rule 10, and the trial court therefore erred in depriving him of the right to the closing argument to the jury . . . [W]e conclude that this error entitles Defendant to a new trial."); *State v. Wells*, 171 N.C. App. 136, 140, 613 S.E.2d 705, 708 (2005) ("Because defendant did not introduce any evidence within the meaning of Rule 10, the court erred in depriving him of the right to the closing argument to the jury. As we did in *Shuler*, we conclude that this error entitles defendant to a new trial."), *disc. rev. denied and appeal dismissed*, 362 N.C. 179, 658 S.E.2d 661 (2008).

North Carolina law regarding whether a defendant "introduced" evidence at trial pursuant to Rule 10 has evolved over the past twenty-five years. In *Hall*, this Court stated:

> the proper test as to whether an object has been put in evidence is whether a party has offered it as substantive evidence or so that the jury may examine it and determine whether it illustrates, corroborates, or impeaches the testimony of a witness. If the party shows it to a witness to refresh his recollection, it has not been offered into evidence.

57 N.C. App. at 564, 291 S.E.2d at 814. Our Supreme Court subsequently adopted the test enunciated in *Hall* and applied it to a case in which the cross-examination of the State's witness resulted in the admission of the contents of the defendant's post-arrest statement. *State v. Macon*, 346 N.C. 109, 114, 484 S.E.2d 538, 541 (1997). The defendant's statement had not otherwise been offered into evidence. *Id.* Our Supreme Court held:

> Although the writing was not itself introduced into evidence by defendant, Officer Denny's reading of its contents to the jury satisfies the requirement in Rule 10 of the General Rules of Practice for the Superior and District Courts that evidence has to be introduced by defendant in order to deprive him of the opening and closing arguments to the jury. The jury received the contents of defendant's statement as substantive evidence without any limiting instruction, not for corroborative or impeachment purposes, as defendant did not testify at trial and the statement did not relate in any way to Officer Denny.

*Id.*

Following our Supreme Court's analysis in *Macon*, this Court stated that "[a]lthough not formally offered and accepted into evidence, evidence is also 'introduced' when [a] new matter is presented to the jury during cross-examination and that matter is *not* relevant to any issue in the case." *Shuler*, 135 N.C. App. at 453, 520 S.E.2d at 588 (citation omitted) (emphasis original). This Court further stated:

> New matters raised during the cross-examination, which are relevant, do not constitute the "introduction" of evidence within the meaning of Rule 10. To hold otherwise, would place upon a defendant the intolerable burden of electing to either refrain

from the exercise of his constitutional right to cross-examine and thereby suffer adverse testimony to stand in the record unchallenged and un-impeached or forfeit the valuable procedural right to closing argument.

*Id.* at 453, 520 S.E.2d at 588-89 (internal citations and quotations omitted).

Here, at the close of all the evidence, the State argued defendant had waived his right to make the final closing argument to the jury based upon his introduction of substantive evidence through defense counsel's cross-examination of Burke County Sheriff's Detective Dean Hennessee ("Detective Hennessee") concerning the statement of Jerry Perryman. The following colloquy represents the testimony relied upon by the State to show defendant "introduced" evidence pursuant to Rule 10:

[Defense counsel]: . . . You filed a report, did you not—there's one—and I would be happy to show you my copy if you have difficulty locating yours—activity date February 10, 2004, a conversation with Jerry Perryman?

[Detective Hennessee]: Yes sir.

[Defense counsel]: Now, Jerry Perryman is the fellow whose residence . . . Helton was found in, is that correct?

[Detective Hennessee]: That's correct.

[Defense counsel]: And you were present when she was located there?

[Detective Hennessee]: Yes, I was.

[Defense counsel]: And because she was located there, I think you indicated in the first paragraph or so you found it necessary and important as part of you investigation to interview Jerry Perryman as well?

[Detective Hennessee]: Yes, sir.

. . . .

[Defense counsel]: Directing your attention, please, sir, to paragraph 3 on that first page, that first sentence, did Perryman report that . . . Helton told them they had done something bad?

[Detective Hennessee]: Yes, sir.

[Defense counsel]: Directing your attention please, sir, to the top of the following page. Did Perryman report to you and to then-investigator—that's John Suttle, is that correct?

[Detective Hennessee]: Yes.

. . . .

[Defense counsel]: And Suttle—that on Saturday before [Helton] brought the gun to his house, he noticed that the knuckles on [Helton's] hand were scratched, is that correct?

[Detective Hennessee]: Yes, sir.

The trial court relied upon our Supreme Court's decision in *Macon* and ruled that the preceding testimony "constitute[d] actually offering evidence, and . . . the State ha[d] the right to open and close."

The facts presented in *Macon* are clearly distinguishable from those at bar. In *Macon*, the State's witness read the notes of another officer concerning the defendant's post-arrest statement on cross-examination. 346 N.C. at 114, 484 S.E.2d at 541. The defendant had not testified and the State had not presented any evidence regarding the defendant's post-arrest statement. *Id.* As this Court has recognized, "[i]n *Macon*, the evidence at issue involved a new matter, not relevant to Officer Denny's testimony on direct, as the State's witnesses had not previously mentioned anything about the defendant's post-arrest statement." *Wells*, 171 N.C. App. at 140, 613 S.E.2d at 707.

Here, on direct examination Detective Hennessee testified at length regarding the course of his investigation. Detective Hennessee initially observed the crime scene and collected evidence later processed by the SBI. Shortly thereafter, Perryman voluntarily gave law enforcement officers information about these crimes. Perryman agreed to allow officers to record her telephone conversations with Helton. Detective Hennessee testified that these recorded conversations tended to support Perryman's account of what had transpired on 5 February 2004. Detective Hennesse also testified that Perryman identified several items that had been stolen from Gibson's residence during the course of his murder, including a hand gun and coins.

Detective Hennessee also provided testimony regarding his visit with Helton at the Women's Correctional Center in which he obtained her statement. Detective Hennessee testified to the substance of Helton's statement, the relevant portions of which are as follows: during the attack, defendant started to pull Gibson's clothes off and

handed them to Helton. Helton searched the pockets and found a gun wrapped in "some kind of paper." Helton then threw the gun toward the door. After the group had finished committing these crimes and arrived back at Helton's apartment, defendant showed Helton the gun. Helton purchased the gun from defendant. Helton "carried the gun around . . . and point[ed] it at [her crack dealer]." Helton subsequently "passed out" and when she awoke, the gun and her "scales" were missing.

Based upon the evidence introduced by the State on direct examination, we hold Detective Hennessee's cross-examination testimony regarding Helton's possession of Gibson's gun clearly did not present a "new matter" to the jury. *Shuler*, 135 N.C. App. at 453, 520 S.E.2d at 588.

The State concedes in its brief that "[t]he only disputed issue in this case among the co-defendants was whether Helton or defendant actually killed the victim by crushing his rib cage and rupturing his lungs. Both accused the other of [Gibson's] murder." Helton's credibility as a witness and co-defendant was a critical matter at issue in the case at bar. Because we have held that Detective Hennessee's cross-examination testimony that Helton possessed Gibson's gun when she arrived at Jerry Perryman's residence did not constitute "a new matter," defense counsel's solicitation of such evidence could have been an attempt to impeach Helton's earlier testimony that Gibson's gun was missing after she had fallen asleep.

Because Detective Hennessee's cross-examination testimony did not present a "new matter" to the jury, defendant did not introduce evidence pursuant to Rule 10. *Id.* The trial court erroneously deprived defendant of his right to make the final closing argument to the jury. Based upon numerous precedents set by this Court reviewing the consequences of and the remedy for this error, defendant is entitled to a new trial. *Id.* at 455, 520 S.E.2d at 590; *Hennis*, 184 N.C. App. at 539, 646 S.E.2d at 400; *Bell*, 179 N.C. App. at 433, 633 S.E.2d at 714; *Wells*, 171 N.C. App. at 140, 613 S.E.2d at 708. In light of our holding, it is unnecessary to address defendant's remaining assignments of error.

## IV. Conclusion

Defendant did not "introduce" evidence at trial pursuant to N.C. Super. and Dist. Ct. R. 10. The trial court erroneously deprived defendant of his right to make the final closing argument to the jury.

Due to prior precedents stating the remedy for this error, defendant is entitled to a new trial.

New Trial.

Judges CALABRIA and STEELMAN concur.