STATE OF NORTH CAROLINA v. JOHN DONALD MATTHEWS

No. COA11-356

(Filed 17 January 2012)

**1. Criminal Law—final closing argument—cross-examination— not introduction of evidence**

Defendant was awarded a new trial for breaking or entering and larceny where the trial court denied defendant the final closing argument based on testimony elicited during cross-examination. Defendant's attorney cross-examined an investigating officer and identified the officer's report as an exhibit, but did not introduce the actual report into evidence or have the officer read it to the jury. The evidence was relevant to the investigation.

**2. Evidence—DNA—blood collection from cigarette cartons— cartons not collected**

In an appeal decided on other grounds, the trial court did not err in denying defendant's motion to exclude DNA evidence where the cigarette cartons from which the blood samples were taken were not collected as evidence. Defendant did not argue bad faith on the part of law enforcement officers, nor did he identify any irregularities in the collection or analysis of the samples, and he did not demonstrate any exculpatory value attached to the cigarette cartons.

**3. Evidence—subsequent crime—admissible**

In an appeal decided on other grounds, the trial court did not err by denying defendant's motion to suppress evidence of a subsequent crime for which defendant had been arrested. The evidence was sufficient to connect defendant to the subsequent crime and it was probative of intent, identity, *modus operandi*, and common scheme or plan. The evidence was not unduly prejudicial.

Appeal by Defendant from judgments entered 13 and 18 October 2010 by Judge Eric L. Levinson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 27 September 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Joseph E. Herrin, for the State.*

*William D. Auman for Defendant-Appellant.*

STATE v. MATTHEWS

[218 N.C. App. 277 (2012)]

McGEE, Judge.

John Donald Matthews (Defendant) was indicted for felonious breaking or entering, larceny after breaking or entering, and larceny of a firearm related to a 2 March 2009 break-in at a gas station and convenience store (the Value Mart) located in Charlotte. Defendant was also indicted for having attained habitual felon status. The owner of the Value Mart, Abdelfattah Abdelmajid (Mr. Abdelmajid) called police after he arrived at the Value Mart on 2 March 2009 and discovered broken glass in the front door. Officer Steven Graham (Officer Graham) of the Charlotte-Mecklenburg Police responded to Mr. Abdelmajid's call regarding the break-in. Mr. Abdelmajid reported that cigarettes had been taken, along with some lighters and a handgun. Officer Graham viewed video surveillance footage from the Value Mart that showed that one man had been involved in the break-in. Officer Christopher Matlock (Officer Matlock) of the Charlotte-Mecklenburg Police also responded to the scene. Officer Matlock testified that he collected ten samples of what appeared to be blood from the front door, from shelves, and from cigarette cartons. These samples were analyzed by the Charlotte-Mecklenburg Police Department, and further external analysis was conducted by Labcorp, a private firm. The samples were determined to be human blood, and DNA analysis connected the blood samples recovered from the scene to Defendant.

The jury convicted Defendant of breaking or entering and larceny after breaking or entering. The jury found Defendant not guilty of larceny of a firearm. The jury further found Defendant guilty of having attained habitual felon status. The trial court determined Defendant had a prior record level IV, and sentenced him to two consecutive terms of 110 to 141 months in prison. Defendant appeals. Additional relevant evidence will be discussed in the body of the opinion.

I.

**[1]** Defendant contends in his third argument that, because Defendant did not present any evidence at trial, the trial court erred by denying his attorney the final closing argument. We agree.

> Rule 10 of the General Rules of Practice for the Superior and District Courts confers upon the defendant in a criminal trial the right to both open and close the final arguments to the jury, provided that "no evidence is introduced by the defendant[.]" N.C. Super. and Dist. Ct. R. 10 ,(2007). This right has been

deemed to be critically important and the improper depriva-
tion of this right entitles a defendant to a new trial.

*State v. English,* 194 N.C. App. 314, 317, 669 S.E.2d 869, 871 (2008)
(citation omitted).

> When a defendant does not introduce evidence, he retains "the
> right to open and close the argument to the jury." Gen. R. Pract.
> Super. and Dist. Ct. 10, 1999 Ann. R. N.C. 66 (Rule 10). As a
> general proposition, any testimony elicited during cross-
> examination is "considered as coming from the party calling
> the witness, even though its only relevance is its tendency to
> support the cross-examiner's case." Indeed, the general rule
> also provides there is no right to offer evidence during cross-
> examination. Nonetheless, evidence may be "introduced,"
> within the meaning of Rule 10, during cross-examination when
> it is "offered" into evidence by the cross-examiner, and
> accepted as such by the trial court. Although not formally
> offered and accepted into evidence, evidence is also "intro-
> duced" when new matter is presented to the jury during cross-
> examination and that matter is *not* relevant to any issue in the
> case. *See State v. Macon,* 346 N.C. 109, 114, 484 S.E.2d 538, 541
> (1997) (cross-examination of State's witness about contents of
> defendant's statement, which had not been presented by the
> State and which "did not relate in any way" to testifying witness,
> constituted the "introduction" of evidence within meaning of
> Rule 10); N.C.G.S. § 8C-1, Rule 611(b) (1992) ("witness may be
> cross-examined on any matter relevant to any issue in the
> case"). New matters raised during the cross-examination,
> which are relevant, do not constitute the "introduction" of evi-
> dence within the meaning of Rule 10. *See* N.C.G.S. § 8C-1, Rule
> 401 (defining relevant evidence). To hold otherwise, "would
> place upon a defendant the intolerable burden of electing to
> either refrain from the exercise of his constitutional right to
> cross-examine and thereby suffer adverse testimony to stand
> in the record unchallenged and un-impeached or forfeit the
> valuable procedural right to closing argument."

*State v. Shuler,* 135 N.C. App. 449, 452-53, 520 S.E.2d 585, 588-89
(1999) (citations omitted); *see also English,* 194 N.C. App. at 318-19,
669 S.E.2d at 872 (2008) (citing *Macon* and *Shuler* and holding that
testimony involving some new facts brought forward by defendant on
cross-examination of investigating officer, based upon that officer's
report, did not constitute new evidence for the purposes of Rule 10).

In the case before us, Defendant's attorney cross-examined Officer Graham, and identified Defendant's Exhibit 2, which was a report made by Officer Graham following his investigation of the break-in at the Value Mart. During Officer Graham's cross-examination, Defendant's attorney elicited confirmation from Officer Graham that, after viewing video surveillance footage of the Value Mart break-in, a man named Basil King was identified as a possible suspect. The trial court denied Defendant's motion to make the final closing argument because it believed Defendant's cross-examination of Officer Graham concerning Basil King constituted the introduction of evidence pursuant to Rule 10.

Defendant introduced for the first time evidence in Officer Graham's report that, based upon the video footage of the break-in, Basil King was a suspect. However, Defendant did not introduce Officer Graham's actual report into evidence, nor did Defendant have Officer Graham read the report to the jury. Furthermore, this evidence was relevant to the investigation of the crimes for which Defendant was convicted, and was contained in Officer Graham's own report. *See State v. Wells*, 171 N.C. App. 136, 139-40, 613 S.E.2d 705, 707-08 (2005). It was the State that first introduced testimony by Officer Graham and other witnesses concerning the investigation and the evidence leading the police to identify Defendant as a suspect. We cannot say that the identification of other suspects by the police constituted new evidence that was "*not* relevant to any issue in the case." *Shuler*, 135 N.C. App. at 453, 520 S.E.2d at 588. Therefore, this testimony cannot be considered the introduction of evidence pursuant to Rule 10. *Id.*; *see also English*, 194 N.C. App. 314, 669 S.E.2d 869; *State v. Hennis*, 184 N.C. App. 536, 646 S.E.2d 398 (2007); *State v. Bell*, 179 N.C. App. 430, 633 S.E.2d 712 (2006); *Wells*, 171 N.C. App. 136, 613 S.E.2d 705.

Furthermore, after Officer Graham's testimony, the following colloquy occurred between the State and Officer Steven Iyevbele (Officer Iyevbele) of the Charlotte-Mecklenburg Police Department:

Q. Okay. And were you assigned to the case involving . . . [D]efendant John Matthews?

A. Yes, ma'am.

Q. What is the complaint number of the case you were assigned?

A. 20090302003600.

Q. And what did you do first when you were assigned this case?

A. I read the entire report.

Q. And what else?

A. Officer Graham indicated that there was a possible suspect named Basil King. I looked Mr. King up on the computer and looked at his current address. I went to his house and I spoke to Mr. King.

Officer Iyevbele, upon being asked a general question concerning his actions in the investigation, testified that Basil King was initially identified as a suspect and that Basil King was investigated. Therefore, the State also introduced evidence at trial that Officer Graham considered Basil King to be a suspect.

Accordingly, we hold that Defendant did not introduce evidence within the meaning of Rule 10, and we must conclude that the trial court's error in denying Defendant the final closing argument entitles Defendant to a new trial. *English*, 194 N.C. App. at 317, 669 S.E.2d at 871.

II.

[2] Because there is a likelihood that, at a new trial, the following issues brought forward on appeal might reoccur, we address these issues now. In Defendant's first argument, he contends that the trial court erred in denying his motion to exclude DNA evidence. We disagree.

Officer Matlock testified that he collected ten blood samples at the scene from the following locations: four from cross bars used as a security measure on the front door, two from the "hand rail" on the interior of the front door, one from the top of a "Newport" cigarette container located on a shelf, one from a plastic shelf beneath the cash register, and two from a cigarette carton found near the "office computer." Officer Matlock took photographs of the areas from which the blood samples were taken that were admitted at trial. The door, shelves, and cigarette cartons from which the blood samples were retrieved were not collected as evidence. Defendant contends that, at a minimum, the cigarette cartons from which blood samples were taken should have been preserved by the police. Defendant's counsel asked Officer Matlock why he did not collect this evidence and secure it at the police station. Officer Matlock answered:

A. In my line of work, if we have an owner present and the property was not taken, that property is released back to the owner once the evidence is collected, i.e. why it's photographed. Otherwise we would have to remove door from the hinges, turn the door in to property, remove the shelves, turn them in to property. And there's obviously just not enough space at property control for—

Q. Oh, I understand that. But as far as the cigarette packs which are little small thing[s], it would be very easy to take them in to your custody and retain them as evidence, would it not?

A. Yes, sir, that is possible. However, I just keep it unanimous, take the photographs, collect the evidence, and then return the property back to the owner.

Q. So you made the decision not to take the cigarette packs and cigarette cartons in to possession as evidence to be presented in court today?

A. Yes, sir, that's how I was trained to do it.

Q. But there are certainly numerous times when you go on a crime scene when pieces of physical evidence are taken in to—you may take photographs of them, but they are taken in to possession and kept, are they not?

A. Yes, sir. However, we have actual crime scene technicians who will collect major pieces of evidences, i.e. homicides, robbery, things of that nature. For a B&E of a business that's what we're trained to collect fingerprints or blood samples off small pieces of material.

Q. It would be the detective's responsibility then to collect evidence from a scene like this as opposed to yours?

A. No, sir, not necessarily. Since we're primary on the scene and I am trained as a crime scene officer, we collect what appears to be the blood samples, what appears to be the fingerprints, and choose to release the property back to the owner, which is what we did in this matter.

Rachel Scott (Ms. Scott) of the Charlotte-Mecklenburg Police Department, an expert in DNA analysis, testified that she tested five of the blood samples, and the DNA profiles for all five samples

matched Defendant's DNA. Defendant hired a DNA expert to review the testing done by Ms. Scott. At the suppression hearing, Defendant's attorney stated that Defendant's expert "confirmed that [the samples] at least procedurally appeared to establish a connection between [the DNA recovered from the crime scene] and the DNA of [Defendant]." Defendant also moved for independent testing of the DNA, and the trial court ordered independent testing to be done by Labcorp, an independent bio-medical testing company.

Dwayne Winston (Mr. Winston), an expert in DNA analysis for Labcorp, testified at trial. Mr. Winston testified that he tested ten blood samples—eight from the crime scene and two samples drawn from Defendant. Mr. Winston testified that the eight samples from the crime scene matched the samples taken from Defendant with a probability of "1 in greater than 6.8 billion for African American, Caucasian and Hispanic population." The State questioned Mr. Winston concerning possible contamination of the samples as follows:

> Q. And this is not a hypothetical. In this particular case there was no evidence of a mixture, is that correct?
>
> A. Correct.
>
> Q. This was a straight one DNA profile?
>
> A. They were single source profiles from all items, yes.
>
> Q. Okay. And there was no evidence of any mixture or contamination in this particular case?
>
> A. That's correct.

Defendant cites no law indicating that the procedure used in this case for collecting and analyzing the blood samples was improper, and we can find none. Defendant cites cases where evidence collected by the police was subsequently lost or destroyed. Our Supreme Court has discussed the applicable law in such situations:

> Defendant also argues that the loss or destruction of the articles of evidence seized at defendant's home resulted in a violation of his rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially

useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333 (1988), quoted in *State v. Mlo*, 335 N.C. 353, 373, 440 S.E.2d 98, 108, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841, 114 S. Ct. 2716 (1994). The trial court's finding that there was no showing of bad faith or willful intent on the part of any law enforcement officer is supported by the record. We also note that defendant has not demonstrated that the missing evidence possessed an exculpatory value that was apparent before it was lost. *See California v. Trombetta*, 467 U.S. 479, 489, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528 (1984). For these reasons we conclude that the State's failure to preserve the articles of evidence seized at defendant's home did not violate his rights to due process and a fair trial.

*State v. Hunt*, 345 N.C. 720, 725, 483 S.E.2d 417, 420-21 (1997). Defendant does not argue any bad faith on the part of law enforcement officers, nor does he identify any irregularities in the collection or analysis of the samples collected that would call into question the results of the analysis; therefore, Defendant fails to demonstrate any exculpatory value attached to the cigarette cartons from which the blood samples were collected. Even assuming *arguendo* that the actual cigarette cartons should have been collected as evidence—a position we do not take—Defendant demonstrates no prejudice. *Id.* Defendant's first argument is without merit.

III.

[3] In Defendant's second argument, he contends the trial court erred in denying his motion to suppress evidence of a subsequent crime for which Defendant had been arrested. We disagree.

Over Defendant's objection, the State presented evidence relating to a break-in of a gas station and convenience store located within the city limits of Charlotte. This break-in occurred on 4 August 2009 (the 4 August break-in), after the break-in involved in the present case. Before trial, Defendant moved to suppress this evidence. Charlotte-Mecklenburg Police Investigator Dennis B. Simmons (Investigator Simmons) testified at the hearing on Defendant's motion to suppress. Investigator Simmons testified that he responded to an alarm at the gas station in the early morning hours of 4 August 2009. Investigator Simmons observed a broken window, which was determined to have been the point of entry. Cigarettes had been stolen from the station and substances were found in various locations inside the station that

appeared to be blood. Samples of these substances were collected and sent for DNA analysis. Once DNA analyses of the substances were completed and the results were received by investigators, a warrant was issued and Defendant was arrested. At the time of trial in the present matter, Defendant had not yet been tried for the 4 August break-in. The trial court denied Defendant's motion to suppress, based upon similarities between the two crimes: the method of entry, the larceny of cigarettes, the type of businesses targeted, the time of day the crimes were committed, the short period of time between the commission of the two crimes, the location of both businesses within Charlotte's city limits, and the blood evidence collected connecting Defendant to the crimes.

Rule of Evidence 404 provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

> Rule 404(b) is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." Thus, as long as the evidence of other crimes or wrongs by the defendant " 'is relevant for some purpose *other than* to show [the] defendant['s] . . . propensity' " to commit the charged crime, such evidence is admissible under Rule 404(b).

*State v. Locklear*, 363 N.C. 438, 447, 681 S.E.2d 293, 301-02 (2009) (citations omitted). Defendant cites no case law and makes no argument that our appellate courts have found error in admitting 404(b) evidence in any cases involving fact situations similar to the facts before us. Defendant makes the following general declarative arguments: the "evidence was insubstantial to conclude that [Defendant] committed the [4 August break-in] offense[,]" "the evidence has no tendency to make the existence of any fact of consequence in this action more or less probative[,]" and that "Rule 403 should have caused the trial court to sustain objection to [the relevant] testimony, even if some remote probative value could attach."

First, we hold that the evidence presented at the suppression hearing was sufficient to link Defendant to the 4 August break-in. DNA evidence was collected at the scene of the 4 August break-in and, based upon the results of the analysis of that DNA evidence, Defendant was charged with that crime. This was sufficient to connect Defendant with the 4 August break-in for the purposes of Rule 404(b).

Second, the 404(b) evidence was probative of—at a minimum— intent, identity, *modus operandi*, and common scheme or plan. Therefore, this evidence was relevant for jury consideration on the issue of whether Defendant was the person who smashed the window at the Value Mart, entered that business, and stole cigarettes. This evidence had the tendency to make relevant facts of this case more or less probable. N.C. Gen. Stat. § 8C-1, Rule 401 (2009) (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Finally, Defendant argues that the 404(b) evidence should have been excluded pursuant to Rule 403. Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (2009). Defendant argues that the 404(b) evidence was unduly prejudicial. We hold, in light of all the facts, that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Defendant's second argument is without merit.

IV.

In his final argument, Defendant contends that the trial court erred by denying his motion to dismiss. We disagree.

Defendant concedes that this argument hinges on his prior arguments that the DNA evidence, and the evidence of Defendant's involvement in the 4 August break-in, should have been excluded. Having held that the above evidence was properly admitted, we further hold that the State presented sufficient evidence to survive

Defendant's motion to dismiss. The trial court did not err in denying Defendant's motion. Defendant's final argument is without merit.

New trial.

Judges ELMORE and HUNTER, JR. concur.